UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
LUIS GONZALEZ,                                              Civil Action No.
                                                            07-cv-4801 (DC)
                                Plaintiff,

            - against-

"JOHN" CABALLERO (First name being unknown)
and NEW ENGLAND MOTOR FREIGHT INC.,

                                Defendants.
----------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S

## MOTION FOR JUDGMENT ON THE PLEADINGS

DANIEL T. LEAV, ESQ. (DTL 5145)
LEAV & STEINBERG, LLP
Attorneys for Plaintiff
120 Broadway, 18th Floor
New York, New York 10271
Tel No.: 212-766-5222

Please note that it is respectfully requested that the Court schedule oral argument on this matter.

TABLE OF CONTENTS

PRELIMINARY STATEMENT OF FACTS AND BACKGROUND ......................1

ARGUMENT I: ..................................................................................4

DEFENDANT'S MOTION IS PREMATURE AS NO DISCOVERY HAS BEEN
CONDUCTED IN THIS MATTER.

ARGUMENT II: ..................................................................................7

DEFENDANTS OWED THE PLAINTIFF BOTH A CONTRACTUAL AND
COMMON LAW DUTY OF CARE IN THIS CASE, WHICH WAS CLEARLY
BREACHED BY VIRTUE OF THE CONDUCT OF THEIR EMPLOYEE.

A. PLAINTIFF HAS STATED A CAUSE OF ACTION ACCORDING TO
PRINCIPLES OF COMMON LAW OF NEGLIGENCE.

B. NEMF NONETHELESS OWES PLAINTIFF A LEGAL DUTY OF CARE
BY VIRTUE OF THE AGREEMENT BETWEEN NEMF AND PLAINTIFF'S
EMPLOYER, AS A DUTY OF CARE TO THE PLAINTIFF HEREIN ARISES
OUT OF SAID CONTRACTUAL OBLIGATION.

CONCLUSION ..................................................................................23

<u>PRELIMINARY STATEMENT OF FACTS AND BACKGROUND</u>

The occurrence which forms the basis for this lawsuit took place on September 12, 2005 at approximately 4:30 p.m. On said date, plaintiff sustained severe personal injuries when he was forced to move display racks that were partially delivered by the defendant NEMF to the Tribeca Soho Animal Hospital – plaintiff's place of employment. The racks were delivered by NEF's employee "John" CABALLERO (first name fictitious as the correct name is unknown). Defendant CABALLERO had refused to deliver racks into the premises. He left the racks on Lispenard Street, a public roadway, in front of the premises. Further CABELLERO disregarded the plaintiff's request for aid in moving the racks into the premises as required. As a result, rather than leave the racks in the street, the Plaintiff attempted to move them inside. In the process of moving the racks he severely injured his back.

The plaintiff sustained a large left paracentral/lateral disc herniation displacing/compressing the left S1 nerve root and impressing on the thecal sac of the lumbar spine. He underwent lumbar epidural steroid injections and ultimately was required to undergo surgical intervention on September 30, 2005, under anesthesia, in the form of left L5-S1 microdiscectomy with muscle dilating technique.

It is alleged that Defendant NEMF, its agents, servants and/or employees, and particularly CABALLERO, were negligent in failing to deliver the materials to the appropriate, designated, proper and required place (inside the premises); in delivering the materials to a place of danger and inconvenience; in leaving the materials in the street; in failing to use the proper equipment meant for transporting the materials to the proper place; in failing to assist plaintiff in transporting the materials to their proper place; in

knowingly leaving the materials in a place from where they knew that plaintiff would have to move same in order to deliver them to the place where they were intended to be delivered; in knowing that the materials delivered could not be moved in safety by plaintiff without the proper equipment and/or assistance to do so; in knowing that plaintiff was alone at the time of the delivery and could not move the materials alone, as the materials delivered were of excessive weight and could not be moved by one person, namely plaintiff; in breaching the terms of the delivery contract; and in failing to complete the delivery of the racks as contracted.

It is well-established that in the trucking industry that *tailgate service* means that it is the recipient's responsibility to have the personnel and/or equipment necessary to unload the material that has been ordered from the back of the delivery truck. Additional charges apply for those deliveries requiring more than customary *tailgate service* service. For instance, pursuant to *lift gate service* contracts the carton/skid is delivered to ground level and does not provide delivery anywhere but *inside the customer's door*. A lift gate is a platform installed at the rear of some delivery trucks used to lower heavy freight to ground level when no loading dock is available. The driver is responsible for lowering the shipment to the ground and delivering the product "inside the first available door".

*Inside delivery* is defined as a driver taking a carton/skid from the delivery truck to the receiving area of the delivery site and then into the desired room or office of the premises.

In this case NEMF was to provide *inside delivery*. Plaintiff has obtained a copy of the invoice generated by NEMF in relation to the delivery in question. See **PLAINTIFF'S EXHIBIT 2**. The invoice demonstrates that this delivery had a total

weight of 450 lbs. and was delivered at 4:25 p.m. The invoice also clearly states that the defendant charged the recipient of the delivery both a "LIFT GATE CHARGE" and an "INSIDE DELIVERY CHARGE" and was thus contractually required to complete the delivery by placing the units *inside* the premises to a desired room or office, as opposed to leaving them on the public roadway. It is undisputed that at the time of the occurrence, the delivery in question was not made inside the premises, but was instead left in the public roadway in front of the plaintiff's place of employment.

<u>ARGUMENT</u>

I.

## DEFENDANT'S MOTION IS PREMATURE AS NO DISCOVERY HAS BEEN CONDUCTED IN THIS MATTER.

On August 24, 2007, an initial conference was held in this matter wherein it was ordered that all parties were to complete discovery as to the issue of liability only, and thereafter return for a status conference on December 14, 2007. Documentary discovery was to be exchanged between the parties as to the issue of liability only. Depositions of all parties were to be held as to the issue of liability only.

On November 15, 2007, the plaintiff served a "Demand for the Production of Documents and Things", demanding certain documentary discovery from the defendants. Included in said demand was a request for a copy of all contracts and agreements in effect between the defendants and the plaintiff's employer and/or the plaintiff, as well as a copy of all rules and regulations maintained by defendants relating to their responsibilities and obligations when making deliveries. The plaintiff also served a set of Interrogatories and a Cross-Notice of EBT on defendants.

To date, the defendants have failed to respond to any of the plaintiff's discovery demands. The defendants have failed to provide copies of any agreements in effect between the defendants and the plaintiff's employer, as well as a copy of all rules and regulations maintained by defendants relating to their responsibilities and obligations when making deliveries. The defendants have failed to identity the employee who made the delivery in question. The defendants have failed to provide any documents, bills,

invoices, etc., which may have been generated in relation to the particular delivery which forms the basis for the instant lawsuit.

Furthermore, defendants have been unwilling to go forward with any depositions on this case, despite the Court's Order to do so. The defendants have been unwilling to appear and take deposition testimony from the plaintiff. Similarly, the defendants have been unwilling to produce both the employee who made the delivery in question and a representative of Defendant NEMF.

Defendants' counsel fails to produce any proof of the terms of any agreement which may have existed in this case, much less a copy of the agreement itself, or any writing relating thereto. Without any proof of the terms of said agreement, much less a copy of the agreement itself, or any writing relating thereto, it cannot be determined whether the plaintiff was in fact a third-party beneficiary of the agreement between defendants and the plaintiff's employer. Indeed, it would be pure speculation to hold that the plaintiff was not in fact a third-party beneficiary of said agreement, given the lack of proof as to its terms.

Defendants have not produced any witnesses to testify that the plaintiff was not in fact a third-party beneficiary of said contract. Defendants have offered no affidavit of an individual with personal knowledge to support an argument that the plaintiff was not in fact a third-party beneficiary of said contract. Defendants have in fact offered no admissible evidence of any kind, other than speculation and conjecture, to support an argument that the plaintiff was not a third-party beneficiary of said contract.

Defendants' failure to produce sufficient proof of the terms of said agreement constitutes a defect in their showing on this motion requiring denial of its motion regardless of the sufficiency of the plaintiff's moving papers.

In Colbourn v. ISS Intern. Service Systems, Inc., the Appellate Division, First Department affirmed the decision of the Supreme Court, New York County, which denied a cleaning contractor's motion to dismiss. 304 A.D.2d 369, 757 N.Y.S.2d 291 (1st Dep't 2003). In Colbourn, an employee of an office building brought an action against the building's cleaning contractor for personal injuries sustained during a slip and fall on a puddle of water that had dripped from a leaky ceiling. The Supreme Court denied the cleaning contractor's motion and the First Department affirmed, as the defendant's failure to produce sufficient proof of the maintenance contract with the building owner was a defect in its prima facie showing requiring denial of its motion regardless of the sufficiency of the plaintiff's moving papers. The Court held that it could not be determined whether the plaintiff was an intended third-party beneficiary of the contract without proof of its terms.

It is self-evident that to grant the instant motion at this early stage without allowing the plaintiff the right to conduct any discovery on this case would deny him to even prove his case. All parties must be given a fair and reasonable opportunity to present all the material that is pertinent to the Court's inquiry in this regard. At a bare minimum documentary discovery and depositions as to liability must be conducted.

II.

## DEFENDANTS OWED THE PLAINTIFF BOTH A CONTRACTUAL AND COMMON LAW DUTY OF CARE IN THIS CASE, WHICH WAS CLEARLY BREACHED BY VIRTUE OF THE CONDUCT OF THEIR EMPLOYEE.

### A.    PLAINTIFF HAS STATED A CAUSE OF ACTION ACCORDING TO PRINCIPLES OF COMMON LAW OF NEGLIGENCE.

In a negligence action, the threshold issue before the Court is whether the defendants owed a legally recognized duty to the plaintiff. In the absence of a legal duty, no liability can be imposed. In analyzing the existence and scope of an alleged tortfeasor's duty, for purpose of a negligence claim, Courts look at the particular facts and circumstances of the case, including the relationship between the parties, whether the plaintiff fell within a zone of foreseeable harm, and whether the reasonably foreseeable risks included the injury-producing incident.

The risk reasonably to be perceived defines the duty to be obeyed. It is risk to another or to others within the range of apprehension. A duty of care supporting a negligence claim extends only to those individuals who are within the orbit of the danger as disclosed to the eye of reasonable vigilance. A duty of care for purposes of a negligence action arises from the relationship of the parties and involves the consideration of several factors, including foreseeability, public policy and control over the situation.

Regardless of whether or not the contractual obligations between defendants and plaintiff's employer are sufficient to establish a legal duty of care owed by defendants to the plaintiff, the law is clear that defendants nonetheless remain subject to the common law duty to use that degree of care and caution which would be exercised by a reasonably

7

and prudent person under like circumstances. Duty in negligence cases is not defined by privity of contract.

In this case, NEMF had a duty to provide complete supervision and assistance for the delivery of the units in question until such time that the delivery was complete. NEMF was solely responsible for the equipment used to complete the delivery and the decisions made as to how the units should be brought inside the premises. The plaintiff should not have been required to intervene in, or even participate in, completing delivery of the units.

Numerous cases involving the scope of duty during the loading/unloading of shipments are in accord. In <u>Hong v. Roadway Express Co.</u>, the Appellate Division, Second Department reversed the decision of the Supreme Court, Kings County, which denied a plaintiff's motion to set aside a jury verdict in favor of a trucking company as against the weight of the evidence at trial. 21 A.D.3d 483, 799 N.Y.S.2d 818 (2nd Dep't 2005). In <u>Hong</u>, a personal injury action was brought against a truck owner and a truck driver related to injuries sustained when metal load bars fell and stuck the plaintiff's hand while he was receiving a delivery. Not only did the case survive the defendant's motion for summary judgment, but the Appellate Division reversed the decision of the trial judge who denied the plaintiff's motion to set aside the defense verdict at trial as being against the weight of the credible evidence.

In <u>Moncion v. Infra-Metals Corp.</u>, the Appellate Division, First Department reversed the decision of the Supreme Court, Bronx County, which granted a motion by a steel distributor, Hunterspoint, for summary judgment, as triable issues of facts existed. 20 A.D.3d 310, 800 N.Y.S.2d 381 (1st Dep't 2005). In <u>Moncion</u>, the plaintiff was injured

when he was struck by falling steel beams which were being unloaded at his place of employment, which was the second delivery stop along the truck driver's route. The Court found a legal duty, and an issue of fact as to the negligence of Hunterspoint, who had unloaded and reloaded the steel at the delivery just prior to the plaintiff's worksite.

In <u>Pensabene v. San Francisco Const. Management, Inc.</u>, the Appellate Division, Second Department reversed the decision of the Supreme Court, Richmond County, which granted a motion by a trucking company for summary judgment, as triable issues of facts existed. 27 A.D.3d 709, 812 N.Y.S.2d 624 (2nd Dep't 2006). In <u>Pensabene,</u> an employee where the goods were being delivered brought suit to recover for personal injuries sustained when he fell out of a trailer while unloading a shipment of pipes. The Supreme Court granted the motion on the ground that the injured plaintiff's conduct in standing on loose pipes during the unloading operation was a superseding cause of his injuries. The Appellate Division reversed as triable issues of fact existed as to whether it was foreseeable that the injured plaintiff would attempt to unload the piping by standing within the trailer.

In <u>English v. B.P.M. Realty Co.</u>, the Supreme Court, Richmond County, denied a warehouse's motion for summary judgment in a case where the plaintiff claimed that he was caused to become injured due to defendant's improper loading of his truck. 15 Misc.3d 1126(A), 841 N.Y.S.2d 218, 2007 WL 1203576 (Sup. Ct. Richmond, 2007). In <u>English,</u> the plaintiff alleged that defendants were negligent in loading a large pallet of cosmetics onto his truck in such a way that a portion thereof extended past the rear of the truck, thus leaving the freight in an improper and dangerous position. Accordingly, the plaintiff was forced to attempt to re-position the pallet without aid from defendant's

employees. The defendant claimed that its duty to plaintiff ended when the goods were delivered to the "tail" of the truck. The Court denied summary judgment to the warehouse as it was negligent in failing to complete delivery by leaving the bundle of freight protruding from the rear of the plaintiff's truck.

See also, Peebles v. Circuit Stores, Inc., 2003 WL 21976402 (S.D.N.Y. 2003) (plaintiff who was injured while unloading boxes from truck entitled to recover against retailer – driver testified that retailer's merchandise was improperly loaded and stacked in trailer); Jackson v. Domtar Industries, Inc., 35 F.3d 89 (2nd Cir. 1994) (evidence created jury question as to whether defendant breached duty of care in case where worker injured while climbing on top of sheetrock in attempt to unload it – plaintiff alleged defendant negligent in causing plaintiff to have to unload his truck in unsafe manner).

With respect to the scope of duty more generally, please note that in Daitch v. Naman, the Appellate Division, First Department affirmed the decision of the Supreme Court, New York County, which denied a contractor's motion to dismiss. 25 A.D.3d 458, 807 N.Y.S.2d 95 (1st Dep't 2006). In Daitch, a tenant brought an action against a contractor to recover for injuries allegedly caused by the contractor's negligent performance of exterior facade work on his apartment building. Although the contractor claimed it owed the plaintiff no duty under the contract, the First Department held that: "Given issues of fact as to whether the contractor's failure to exercise due care in the performance of its contract with the owner created an unreasonable risk of harm to plaintiff, it does not avail the contractor to argue that the contract imposed no duty of care to plaintiff."

Indeed, as has been recognized by the Court of Appeals, the scope of a defendant's legal duty in a negligence case is not defined by privity of contract and the obligations rooted in a contract may or may not engender a duty to those not in privity. See, Strauss v. Belle Realty Co., 65 N.Y.2d 399, 482 N.E.2d 34, 492 N.Y.S.2d 555 (1985). The absence of privity does not foreclose recognition of a duty.

In the present case, it is the breach of the recognized common law duty of reasonable care, in addition to the breach of the contract obligation, which constitutes the negligence. Here the Plaintiff was left with a large delivery in the street in front of his place of employment. He was then left with two choices – he could either leave the delivery in the street presenting a clear hazard or attempt to move the delivery inside. He chose the latter course and was injured.

Given the issues of fact as to whether NEMF's failure to use due care in the performance of its delivery to the site in question created an unreasonable risk of harm to the plaintiff, it does not avail NEMF to argue that the contract imposed no duty of care to plaintiff. Clearly, the plaintiff herein falls within the zone of foreseeable harm, and the reasonably foreseeable risks include the incident in question.

In Genen v. Metro-North Commuter R.R., the Appellate Division, First Department affirmed the decision of the Supreme Court, New York County, which denied a snow removal contractor's motion for summary judgment. 261 A.D.2d 211, 690 N.Y.S.2d 213 (1st Dep't 1999). In Genen, a pedestrian brought a negligence action against a snow removal contractor for injuries allegedly sustained in a slip and fall on an icy railroad platform. The Court began by stating that clearly the movant assumed no independent duty of care to the plaintiff solely by virtue of the actual terms of its snow

11

removal contract with Metro-North. However, it was noted that the movant may be liable to the plaintiff for its acts of negligence if those acts created or increased a hazard and were the proximate cause of the plaintiff's injuries

Although the contractor in <u>Genen</u> claimed it owed the plaintiff no duty under the contract, the First Department held that, having undertaken to perform the work required by the contract, the contractor was obligated to exercise reasonable care in doing so, and that genuine issues of material fact as to whether the conduct of the contractor created or increased a hazard that would not have existed but for contractor's actions precluded summary judgment. In the present case, the mere existence of an agreement between NEMF and the plaintiff's employer should not immunize NEMF from any liability premised on its own negligent acts and omissions.

It is horn book law that if an actor's negligent performance of an undertaking increases the risk of harm to third persons, the fact that he is acting under a contract with another will not prevent his liability to a third person. <u>Restatement [Second] of Torts §</u> <u>324A, comment c</u>.

Thus, in the present case, it does not benefit NEMF to argue that the contract imposed no duty of care to Plaintiff. Having undertaken to deliver the units in question, NEMF was obligated to exercise reasonable care in doing so, or be held liable in negligence. As NEMF negligently created and increased a dangerous condition by its own act of leaving the units in question in the street, the scope of Defendants' duty should be determined under traditional negligence principles, in addition to a breach of contract theory.

Indeed, the very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in the performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim.

The failure of NEMF to fully perform pursuant to the agreement is clearly an issue here. Also, the claim against NEMF includes claims which arise out of its affirmative acts in improperly delivering the units in question, and leaving them in such a state that it was likely that the incident in question would occur. Thus, NEMF's duty to exercise reasonable care in relation to Plaintiff in this context arose not only out of a contract, but also by its own acts that created a risk of injury to the plaintiff.

**B.    NEMF NONETHELESS OWES PLAINTIFF A LEGAL DUTY OF CARE BY VIRTUE OF THE AGREEMENT BETWEEN NEMF AND PLAINTIFF'S EMPLOYER, AS A DUTY OF CARE TO THE PLAINTIFFS HEREIN ARISES OUT OF SAID CONTRACTUAL OBLIGATION.**

A contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third-party. But it is well-settled that one who assumes to act, may thereby become subject to the duty of acting carefully, if he acts at all. The Court of Appeals of New York has identified several sets of circumstances in which a duty of care to non-contracting third parties may arise out of a contractual obligation or the performance thereof, recognizing that the common law duty of reasonable care is not always owed solely to the person with whom the contract is made or those claiming through him, but may also inure to the benefit of others.

13

H.R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896 (1928), provides the first illustration of such a circumstance. In H.R. Moch Co., the defendant waterworks company entered into a contract with the city for the supply of water. A fire ensued and the plaintiff's warehouse was burned when the pressure in the public water supply failed, allegedly due to the defendant's failure to supply adequate water pressure. The Court, in denying plaintiff's claim for property damage against the utility company, nonetheless held that liability may be imposed where "the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good."

The Espinal court defined the phrase "launched a force or instrument of harm" to mean a defendant who undertakes to render services and then negligently creates or exacerbates a dangerous condition. 98 N.Y.2d 136, 773 N.E.2d 485, 746 N.Y.S.2d 120 (2002). Notably, the Court failed to explain when a defendant's conduct may be considered to have "stopped where inaction is at most a refusal to become an instrument for good," thus leaving the phrase open to interpretation.

In the present case, NEMF's conduct has advanced to such a point as to have launched a force or instrument of harm, and has stopped where inaction is at most a refusal to become an instrument for good, thus a duty of care to Plaintiff must be found. NEMF's conduct has gone forward to such a stage that their inaction resulted in not merely withholding a benefit, but instead positively and actively worked an injury. NEMF, having undertaken to render a full and complete "INSIDE DELIVERY" for the units in question as per the defendant's invoice, thereafter negligently created a

dangerous condition by failing to complete said delivery leaving the package of racks in the street.

Clearly, <u>H.R. Moch Co.</u> is distinguishable and should not be followed in terms of its actual outcome. The contract at issue in <u>H.R. Moch Co.</u> was essentially a utility contract for the provision of a public service to an entire municipality. Thus, as the Court indicated, liability in such a case would be unduly and extended to an indefinite number of potential beneficiaries, by such an enlargement of the zone of duty. The decision not to extend the "zone of duty" owed by the defendant to all members of the municipality who may benefit from the supply of water was purely policy-based. In contrast, the present case involves an agreement of a much smaller scale. Liability in the present case would not be owed to an indefinite number of potential beneficiaries, but would instead be limited to the small group of employees of Tribeca Soho, the contracting party, who were employed at the location in question. Surely the agreement in question, between NEMF and Tribeca Soho, existed solely for the benefit of those employees of Tribeca Soho who were employed at the location in question and who were responsible for receiving deliveries.

Numerous cases support the argument that a duty is owed to Plaintiff herein under the principles described in <u>H.R. Moch Co.</u>. In <u>Marcinak v. Technical Mechanical Services, Inc.</u>, the Appellate Division, First Department affirmed the judgment of the Supreme Court, New York County, entered upon a jury verdict which found a refrigeration maintenance company liable for a plaintiff's slip and fall accident. 17 A.D.3d 140, 793 N.Y.S.2d 350 (1st Dep't 2005).

In <u>Marcinak</u>, the plaintiff brought a personal injury action against the company contracted to service refrigeration units near the site of his slip and fall accident, alleging a failure to properly service a refrigerator which subsequently leaked oil and water onto an adjacent floor. At trial, the jury found the defendant maintenance company liable, and the defendant appealed entry of said judgment. The First Department affirmed, finding that there was sufficient evidence in the record that the refrigerator maintenance company might have launched its own force or instrument of harm.

In <u>Prenderville v. International Service Sytems, Inc.</u>, the Appellate Division, First Department reversed the decision of the Supreme Court, New York County, which granted a defendant's motion for summary judgment, in a case brought by a pedestrian injured when she slipped and fell at a street corner. 10 A.D.3d 334, 781 N.Y.S.2d 110 (1st Dep't 2004).

In <u>Prenderville</u>, the plaintiff brought a personal injury action against the maintenance company contracted to remove snow at the site of her slip and fall accident, a sidewalk in lower Manhattan. As the Appellate Division noted, the contractor was required to make a prima facie showing that they did not perform work at the location with respect to the condition which caused the plaintiff's injury, or alternatively, that if they did perform such operations, those efforts did not create or exacerbate a dangerous condition. However, the movant failed in both respects, thus their prima facie showing was patently insufficient.

Similarly, in the present case, NEMF has failed to establish that their efforts did not create a hazardous situation. As in <u>Prenderville</u>, there is also sufficient evidence to raise a triable issue of fact as to whether NEMF created a dangerous condition. The

conduct of NEMF pursuant to the agreement went forward to such a stage that inaction, in failing to complete the delivery as required, resulted in causing an injury. NEMF'S acts and omissions led inevitably and directly to the plaintiff's injuries.

Eaves Brooks Costume v. Y.B.H. Realty, 76 N.Y.2d 220, 556 N.E.2d 1093, 557 N.Y.S.2d 286 (1990), provides a second illustration of a circumstance in which a duty of care to non-contracting third parties may arise out of a contractual obligation or the performance thereof. In Eaves Brooks Costume, the Court, in denying plaintiff's claim for property damage against two sprinkler inspection and maintenance companies who contracted with the building owner, nonetheless held that liability may be imposed where "performance of contractual obligations has induced detrimental reliance on continued performance."

In the present case, a duty of care to Plaintiff must be found, as performance of NEMF's contractual obligations had induced detrimental reliance by Plaintiff on complete performance by NEMF. Here, the record is plain that Plaintiff relied on NEMF to provide complete "INSIDE DELIVERY" of the units in question. Obviously, Plaintiff relied upon NEMF, who was responsible for providing complete "INSIDE DELIVERY", to do its job. It is the bill of delivery which evinces the duty that was created between the parties herein.

Surely, CABALLERO, acting within the scope of his employment with NEMF, was fully aware that "INSIDE DELIVERY" was required pursuant to the terms of invoice and that his actions constituted a breach of that agreement. Nonetheless, CABALLERO refused to fully comply with these requirements and he knowingly put the plaintiff in the path of harm.

Clearly, Eaves Brooks Costume, which denied plaintiff recovery, is distinguishable and should not be followed with respect to the particular outcome. The contracts at issue in Eaves Brooks Costume covered a fire sprinkler system covering 96,000 square feet and including approximately 1,000 sprinkler heads. In contrast, the present case involves a contract of a much smaller scale. Furthermore, both contracts in Eaves Brooks Costume were written and contained express limitation of liability language. In contrast, the present case involves no such language. In Eaves Brooks Costume, the plaintiff alleged only that the defendants' failed to conduct timely inspections and testing. In contrast, the present case involves allegations of both affirmative acts and omissions of negligence rising to a level above a simple failure to inspect a sprinkler system.

The Court in Eaves Brooks Costume relied on policy considerations to foreclose liability, for example, the plaintiff's right to seek damages directly from the building owners; the building owners being in a better position to insure against any property loss in the building; and the limited scope of defendants' undertaking reflected in the minimum annual services fee arrangement of $120 and $660, respectively. Those factors and policy considerations do not apply in this case. Ultimately, the Court's decision in Eaves Brooks Costume was policy based, with the Court citing to the possibility of higher insurance premiums and the need to keep services available at an affordable rate.

Palka v. Servicemaster Management Services Corp., 83 N.Y.2d 579, 634 N.E.2d 189, 611 N.Y.S.2d 817 (1994), provides a third illustration of a circumstance in which a duty of care to non-contracting third parties may arise out of a contractual obligation or the performance thereof. In Palka, the Court, in upholding a plaintiff's claim for personal

injuries against a maintenance company who contracted with the hospital whereat the plaintiff was employed, despite the absence of contractual privity, held that when a party contracts to inspect and repair and possesses the exclusive management and control of real or personal property which results in negligent infliction of injury, its assumed duty of care extends to non-contracting individuals reasonably within the zone and contemplation of the intended services, thus liability may be imposed.

The Court recognized that not uncommonly, parties outside a contract are permitted to sue for tort damages arising out of negligently performed or omitted contractual duties, and pointed out that while the existence of a duty involves scrutiny of the wrongfulness of a defendant's action or inaction, it correspondingly necessitates an examination of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal imposition of a duty. It was further noted that Courts traditionally fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability and public policies affecting the expansion or limitation of new channels of liability.

Clearly, Palka is controlling law in the present case and requires a finding that NEMF owes a duty of care to Plaintiff herein. The holding in Palka was not limited to cases involving contracts to inspect, repair and possess the exclusive management and control of real property. Instead, liability may also be found in cases where a defendant has an exclusive and comprehensive agreement with respect to other aspects of personal property, such as the delivery of same.

19

In the present case, NEMF was the sole authorized delivery company for the units in question. No one, other than NEMF's employees were charged with the duty of completing delivery of said units. Thus, the agreement in effect was "comprehensive and exclusive" with respect to the delivery of the particular piece of personal property at issue in the present case, which is sufficient to form a basis for the imposition of liability under Palka. By its very words, <u>Palka</u> requires merely that the contract in question be comprehensive and exclusive with respect to the particular subject matter of the contract.

Additionally, as in <u>Palka</u>, the relationships in the present case, between NEMF, Tribeca Soho, and their employee Mr. GONZALEZ, are reasonably connected and anticipated relationships. The duty to be imposed would be owed to the finite and discrete group of those individuals employed by Tribeca Soho at the offices in question. Here, the functions to be performed by NEMF were not directed to a faceless or unlimited universe of persons or members of the general public. Rather, a known and identifiable group – employees of the delivery recipient - was to benefit and be protected by the complete inside delivery of the units in question, which was to be assumed and fully performed exclusively by NEMF. Furthermore, it is foreseeable that the plaintiff would try and move the units himself, thereby creating causation.

The particularity of NEMF's assumed responsibility under the agreement is another factor weighing in favor of Plaintiff. The agreement in place was specific as to the subject mater, scope, duties and responsibilities of NEMF. That they were performing this task pursuant to a contractual obligation does not diminish their duty to perform same in a reasonable manner and should not allow them to be shielded from responsibility for

their actions. All of these factors, taken together, support imposition of liability against these Defendants in favor of this Plaintiff.

All persons employed by Tribeca Soho who are charged with receiving deliveries at the office in question, including Plaintiff LUIS GONZALEZ, surely hold a reasonable expectation that someone is in charge of and responsible for completeing said deliveries. Clearly, NEMF alone holds these duties and undertook them. The arrangements between NEMF and Tribeca Soho plainly affect the safety of all who are charged with receiving deliveries, who are entitled to rely on the complete and non-negligent delivery services imposed by any agreements. In the present case, the very purpose of any agreements was to provide full and complete "INSIDE DELIVERY" and thus a safe environment to those foreseeably on the premises. That benefit – safety – is immediate to Plaintiff LUIS GONZALEZ.

Similarly, NEMF should have a reasonable expectation that it may be answerable to its customers and the employees of the companies with which it contracts, should their delivery services fail in some meaningful regard. To expect otherwise would be illogical. NEMF cannot reasonably claim that it was unaware, or that it was entitled to be unaware, that employees of Tribeca Soho would expect a delivery company to perform complete delivery of the units in question with ordinary prudence and care. In fact, the very "end and aim" of the agreement was that NEMF was to become the sole entity charged with full and complete delivery of the units in question. NEMF has not come forth with any evidence that the job of completing delivery rested with someone else.

The limited possible proliferation of claims is another factor that weighs in Plaintiff's favor, and further distinguishes the present case from many prior cases,

21

including H.R. Moch Co., and its progeny. There is also no likelihood of unlimited or insurer-like liability in the present case, should liability be imposed. Nor does Plaintiff propose an expanded or new channel of liability. The present case involves one isolated incident. There was no catastrophic event having widespread consequences to an almost indefinite group of people, e.g. a blackout or power outage. See, e.g., Strauss v. Belle Realty Co., 65 N.Y.2d 399, 482 N.E.2d 34, 492 N.Y.S.2d 555 (1985) (Consolidated Edison not answerable to tenant of New York City apartment building injured in common area as a result of blackout of metropolis of several million residents).

The Court should also note that nowhere in our case law does it state that the three main cases cited above, H.R. Moch Co., Eaves Brooks Costume, and Palka, are the exclusive avenues by which a plaintiff can prove a duty of care to a non-contracting third party. Nothing in the case law precludes a finding of duty in circumstances different than those discussed above.

The cases cited by defendants herein are clearly distinguishable and should not be followed. In Lippman v. Island Helicopter Corporation, 670 N.Y.S.2d 529, the Court's decision was based in part on the fact that no contract existed between the defendant and the plaintiff's employer. No evidence as to the terms of any delivery invoice was presented. Also, the unit which was being delivered was not left in a place of danger at the time that the defendant refused to proceed further with the delivery, unlike in the present case. In the present case, it cannot be stressed enough that the units in question were left in a public roadway at the time that the defendant's employee left the scene of the occurrence.

Swade v. Nassau Valve & Supply Corp., 734 N.Y.S.2d 85, is completely inapposite to the present case, since in that case the injured plaintiff was picking up a shipment at the defendant's facility and was hurt while he was loading his truck with the defendant's goods. There was no claim that the defendant's employees were contractually required to load the plaintiff's truck as part of completing the sale of the goods in question. Contrastingly, in the presence case, the essence of the defendant's obligation was not merely to drive the units to the street outside of the plaintiff's place of employment, but was to instead bring them inside to a proper place of safety.

Conte v. Aeolian Corp., 437 N.Y.S.2d 473, is also unlike the present case in several important respects. In Conte the injured party was told that they would have an opportunity to be assisted in making the pickup of a piano if they simply waited until after the lunch hour. The plaintiff went ahead nonetheless and was injured. However, in this case, the plaintiff waited for the defendant's employee to arrive and to complete the delivery, but it was the defendant who left the delivery site without having completed the delivery.

CONCLUSION

On a motion for judgment on the pleadings, the Court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. In order to render a judgment on the pleadings, the Court must be satisfied that the non-moving parties' pleadings cannot state any set of facts that would entitle the non-moving party to relief.

Based upon these facts, and giving the plaintiff every reasonable inference, the plaintiff herein has clearly stated a cause of action against Defendants NEMF and CABALLERO such that the instant motion must be denied. The complaint herein should not be dismissed for failure to state a claim since it does not appear beyond doubt that the plaintiff can prove no set of facts in support of claims that would entitle him to relief.

**WHEREFORE** it is respectfully requested that this Court deny the defendants' motion for judgment on the pleadings in favor of the defendants, together with such other and further relief as may be just, proper and equitable under the circumstances.

Dated: February 26, 2008
     New York, New York            Yours etc.,

                               DANIEL T. LEAV, ESQ. (DTL 5145)
                               LEAV & STEINBERG, LLP
                               Attorneys for Plaintiff
                               120 Broadway, 18th Floor
                               New York, New York 10271
                               Tel No.: 212-766-5222

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

LUIS GONZALEZ,                                                    Civil Action No.
                                                                 07-cv-4801 (DC)
                    Plaintiff,

            - against-                                           DECLARATION IN
                                                                 IN OPPOSITION TO
"JOHN" CABALLERO (First name being unknown)                      MOTION FOR
and NEW ENGLAND MOTOR FREIGHT INC.,                              JUDGMENT ON
                                                                 THE PLEADINGS
                    Defendants.
-----------------------------------------------------------------------X

        DANIEL T. LEAV, an attorney admitted to practice before the bar of this Court

hereby declares under penalties pursuant to 28 U.S.C. § 1746 that the following is true

and correct:

        1.      I am a partner with the law firm of LEAV & STEINBERG, L.L.P.,

attorneys for the Plaintiff LUIS GONZALEZ, and am fully familiar with the pleadings

and proceedings heretofore had herein by virtue of the review of the file maintained by

your affirmant's office in connection with this matter.

        2.      This declaration and the accompanying Memorandum of Law are

respectfully submitted in opposition to the motion of the defendants "JOHN"

CABALLERO (hereinafter referred to as "CABALLERO") and NEW ENGLAND

MOTOR FREIGHT INC. (hereinafter referred to as "NEMF") seeking an Order pursuant

to F.R.C.P. 12 (c) dismissing each and every cause of action contained within the

Plaintiff's Verified Complaint.

        3.      Attached hereto as **Exhibit 1** is a copy of the Plaintiff's Response to the

Demand for a Bill of Particulars pursuant to the demand of defendant NEMF dated

November 13, 2007.

4.    Attached hereto as **Exhibit 2** is a copy of the delivery invoice created by NEMF in relation to the delivery made by NEMF to the plaintiff's employer on September 12, 2005.

5.    Please note that it is respectfully requested that the Court schedule oral argument on this matter.


WHEREFORE it is respectfully requested that this Court deny the defendants' motion for judgment on the pleadings in favor of the defendants, together with such other and further relief as may be just, proper and equitable under the circumstances.

Dated: February 26, 2008
      New York, New York

Yours etc.,

_____
DANIEL T. LEAV, ESQ. (DTL 5145)
LEAV & STEINBERG, LLP
Attorneys for Plaintiff
120 Broadway, 18th Floor
New York, New York 10271
Tel No.: 212-766-5222

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LUIS GONZALEZ,

                      Plaintiff,

          - against -

"JOHN" CABALLERO (First name being unknown)
and NEW ENGLAND MOTOR FREIGHT INC.,

                  Defendants.
------------------------------------------------------------------X

**07 CIV 4801**

**PLAINTIFF'S
RESPONSE
TO DEFENDANT,
NEW ENGLAND
MOTOR FREIGHT INC,
DEMAND FOR A BILL OF
PARTICULARS**

       Plaintiff, LUIS GONZALEZ, responds to the Demand for a Bill of Particulars pursuant to

the demand of defendant NEW ENGLAND MOTOR FREIGHT INC. by his attorneys, LEAV &

STEINBERG, LLP., upon information and belief as follows:

       1) The occurrence took place on September 12, 2005 at approximately 4:30 P.M.

       2) Plaintiff sustained severe, serious and permanent personal injuries when he was forced

to move display racks that were delivered by the defendant, NEW ENGLAND MOTOR

FREIGHT INC., and/or its agents and/or employees, without the aid or proper equipment, after

defendant, "JOHN" CABALLERO refused to deliver the aforesaid racks into, onto or near the

premises of Tribeca Soho Animal Hospital, instead leaving the racks on a public roadway and

disregarding plaintiff's request for assistance and aid in moving the racks into the premises as

required.

       3) The occurrence took place on the public roadway located on Lispenard Street, in the

County of New York, City and State of New York and within the premises known as

Tribeca Soho Animal Hospital, plaintiff's place of employment, located at 5 Lispenard Street, in

the County of New York, City and State of New York.

       4) Defendant, NEW ENGLAND MOTOR FREIGHT INC., its agents, servants and/or

Employees, particularly "JOHN" CABALLERO, were careless, reckless and negligent in failing to deliver the materials (racks) to the appropriate place (loading dock); in delivering the materials to place of danger and inconvenience; in leaving the materials in the street; defendants failed to perform the duty owed in that defendants failed to deliver the materials to the place designated for such deliveries; in failing to transport the materials to their proper place; in failing to use the equipment meant for transporting the materials to the proper place; in failing to assist plaintiff in transporting the materials to their proper place; in knowingly leaving the materials in a place from where they knew that plaintiff would have to move same in order to deliver them to the place where they were intended to be delivered; in knowingly leaving the materials in an improper place; in knowingly failing to deliver the materials to the proper place; in knowing that the materials delivered could not be moved in safety by plaintiff alone; in knowing that the materials delivered could not be moved in safety by plaintiff without the proper equipment and/or assistance to do so; in failing to use the proper equipment to deliver said materials; in knowing that plaintiff was alone at the time of the delivery and could not move the materials alone; in knowing that the materials delivered were of excessive weight and could not be moved by one person, namely plaintiff; in knowing that plaintiff would be forced to attempt to move the materials by himself; in breaching the terms of the delivery contract; in failing to properly delivery said racks into the premises of plaintiff's employer; in failing to properly instruct, train, teach and guide its drivers and/or delivery personnel in proper delivery methods to customers; in failing to complete the delivery of the racks as contracted; in failing to take any and all reasonable precautions to safeguard against this occurrence; in failing to give plaintiff an opportunity to avoid this occurrence; in failing to provide adequate, sufficient and/or competent personnel to ensure against this occurrence; in failing to exercise that degree of care which is

reasonably prudent under the circumstances; in that they failed to use due care, caution, precaution and diligence in this matter; and in the gross, wanton, reckless and willful acts of defendants, their agents, servants and/or employees; Defendants were otherwise careless, reckless and negligent under the circumstances and failed to exercise reasonable care and prudence herein.

    5a)  Plaintiff sustained the following serious, severe and grievous personal injuries:

    a)  **Large left paracentral/lateral disc herniation displacing/compressing left S-1 root and impressing on thecal sac of the Lumbar spine;**

    b)  **Abnormal signal of the L5/S1 disc, with disc herniation (1 cm) into the spinal canal, in the left side compressing left sided nerve roots, consistent with cauda equine syndrome;**

    c)  Left **Leg pain, numbness and ;**

    d)  **Sciatica;**

    e)  **Urinary and fecal incontinence;**

**That on September 23, 2005, under anesthesia, plaintiff underwent the following operative procedures: 1) Left transforaminal epidural steroid injection at L5-S1 and S1 levels with epidurogram and selective blocks at these levels as follows:**

The patient was brought to operating room #1 and positioned prone.  C-arm fluoroscopy was used.  The back was prepped and draped in a sterile fashion.  Under local anesthesia, a 22-gauge 3-1/2 spinal needle was advanced to contact the mid-pedicle of L5 on the left on the AP view and the 6 o'clock position of the intervertebral foramen on the lateral view.  Aspiration was negative.  There was no paresthesia.  Injection of 2 cc of Hypaque revealed a Left S1 radiculogram with reproduction of the patient's pain.  Then 10 mg of Lidocaine and 40 mg of triamcinolone were injection with washout of the contrast.  The needle was removed.  The patient was brought back to the holding area in stable condition.  His exam here revealed no new neurological deficits.  The patient reported complete pain relief 10 minutes after the procedure.

**That on September 30, 2005, under anesthesia, plaintiff underwent the following operative procedures: 1) Left L5-S1 microdiscectomy with muscle dilating technique, as follows:**

The patient was taken to the operating room where his trachea was carefully intubated by the anesthesiologist.  General endotracheal anesthesia was induced and maintained throughout

the case. The patient was positioned on the operating room table prone on a Wilson frame and his back was gently flexed. The patient's lower back was then prepped and draped in the usual sterile fashion.

An incision was marked on the left side of midline at L5-S1 22 mm in length. This was infiltrated with 0.25% Marcaine mixed with 1% lidocaine and epinephrine solution approximately 10 cc. The skin was then opened sharply. A needle was placed on the lamina and facet at L5-S1 under fluoroscopic guidance. Next, serial dilators were placed over the needle to expose the L5-S1 lamina. A pipeline disposable tube was then placed over the dilators and secured in place.

The operating microscope was then brought in at the operative level of L5-S1. There was a large interspace in this region. A left-sided hemilaminotomu was performed at L5 to provide further exposure as well as very minimal medial facetectomy on that side. The lateral one-third of the ligamentum flavum was also removed to expose the dura and nerve root. The nerve root and dura were pushed dorsally by a ventral bulge. With retraction of the root, free fragments of disc could be seen and several very small free fragments were removed from under the nerve. With further retraction, there was a very large hole in the annulus. Through this hole, there was another dominant fragment of disc measuring approximately 1 x 2 cm and this was removed. The disc space was also probed for loose disc material and there was quite a bit of this that was removed. However, aggressive disectomy was not performed as the nerve root was decompressed at this point.

Some care was taken to remove the subligamentous disc under the nerve root due to its proximity to the nerve. Next, the disc space was irrigated and there were no further free fragments. The Wilson frame was relaxed and again the disc space was checked. There were no other free fragments and the nerve root was free from compression. Copious antibiotic irrigation was used.

The wound was then closed in layers and Dermabond was used on the skin. The patient was returned to the supine position and allowed to emerge from anesthesia. The patient was then extubated and taken to the recovery room in stable condition. All counts were correct. The estimated blood loss was less than 100 cc. The patient did not receive any blood or blood products in transfusion.

That the above injuries were accompanied by and productive of pain; pulling sensation;

numbness; tenderness; rigidity; stiffness; swelling; inflammation; weakness; denervation;

paresthesia; synovitis; scarring; tightness; malfunction; spasms; restriction and limitation of all

movement, motion and bending; post-traumatic arthritis and/or arthritic changes; osteoarthritis;

pain on change of weather; soreness; muscle spasms; induration; mal coordination; effusions;

edema; loss of strength; fatigue; thickening; contracture; softening; fragmentation; ecchymosis;

myositis; atrophy; sensitivity; shrinking; anesthesia; nerve damage; separation; calcification;

osteoporosis; tearing; neuropathy; adhesions; difficulty sleeping; narrowing; instability; difficulty walking, standing, bending, sitting and climbing stairs; difficulty and pain bending and straightening up; inability to lift; restricted full and guarded movements; limited motion with pain; movements with great difficulty; non-weight bearing; extreme pain in the neck and backbuckling; decreased range of motion in all planes; decreased strength; numbness of the legs, particularly the left leg; inability to stand for long periods of time; tenderness of the back, legs and neck; plaintiff walks with an abnormal gait; plaintiff has sustained disfiguring and deforming scarring at the surgical sites; plaintiff experiences diffculty in urinating and move bowels voluntarily; discomfort, deformity, and disability all requiring intensive pain management and pain medication all resulting in permanent disability;

Plaintiff has been advised that the aforementioned conditions are of a chronic and protracted nature and will have permanent residual effects and will manifest permanent sequelae and plaintiff expressly claims any and all sequelae and/or residuals which may manifest themselves prior to the time of trial;

Plaintiff further claims any and/or all damage or injury to surrounding tissues, ligaments, cartilages, muscles, and supporting structures at the site of the injuries;

Plaintiff is undergoing extensive physical therapy and further requires analgesics and pain medications in an effort to alleviate the constant pain he is experiencing;

Upon information and belief, plaintiff will require further surgery;

Upon information and belief, the foregoing injuries are permanent;

Plaintiff was been confined to his bed and home intermittently since the date of the accident;

d) Plaintiff claims the following special damages to date which are continuing and estimated:

| | |
|---|---|
| 1) Physicians services, approx. | $35,000.00 |
| 2) Hospital expenses, approx. | $75,000.00 |

3) X-rays, approx.                              $20,000.00

4) Nurses services:            Included in Hospital expenses

5) Chiropractors:                               N/A

6) Physiotherapy, approx.                       $10,000.00

7) Drugs and medication, approx.                $ 2,000.00

8) Medical supplies:                            To be provided

9) Any other medical treatment:                 To be provided, if
                                                applicable.

     6)  Plaintiff was treated at the following hospital for injuries he sustained as a result of this occurrence:

- St. Barnabas Hospital     Date of Service:  9-20-05
  4422 Third Avenue
  Bronx, New York 10457

- Jacobi Medical Center:     Dates of Service: 9-21-05 -
  1400 Pelham Parkway South     10/2/05
  Bronx, New York 10461

     7)  Plaintiff has received treatment from the following medical providers as a result of the injuries sustained in this accident:

- Jerome Family Health Center
  1778 Jerome Avenue
  Bronx, New York 10453

- E. Tremont Medical Center
  930 East Tremont Avenue
  Bronx, New York 10460

8a)  Plaintiff's employer at the time of the accident is as follows:

- Tribeca Soho Animal Hospital
  5 Lispenard Street
  New York, New York

b)  Plaintiff was employed as a maintenance worker and stock/inventory person.

c)  Plaintiff's job duties consisted of cleaning the animal hospital facility and re-stocking the animal hospital facility with various supplies within the animal hospital facility.

d)  Plaintiff is not self employed.

e)  Plaintiff has not returned to work since September 20, 2005, as a result of the injuries he sustained in this accident.

f)  At the time of the occurrence herein plaintiff was earning approximately $600.00 per week plus benefits.  As a result of the occurrence herein and the injuries sustained by plaintiff he has sustained a loss of income totaling the sum of approximately ....................$70,000.00 to date which is continuing.

g)  Plaintiff was not a student at the time of the accident.

9)  Any special damages or additional expenses incurred will be claimed in the future.

10)  Plaintiff will rely upon the Court taking judicial notice at the time of trial of the applicable laws, rules, statutes, codes, ordinances and regulations that defendants violated.

11)  Plaintiff resides at 1800 Davidson Avenue, Bronx, New York 10453.  His social security number is 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 and his date of birth is October 30, 1964.

12)  Plaintiff, LUIS GONZALEZ sustained a "serious injury" under Section 5102(d) of the Insurance Law in that he suffered a personal injury resulting in a permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; a significant limitation of use of a body organ, member, function or system; and a medically determined injury or impairment of a non permanent nature which prevents him from performing substantially all of the material acts which constitute his usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

The plaintiff additionally suffered economic loss greater than basic economic loss as that term is used in Section 5102 et. seq. of the New York State Insurance Law.

Dated: New York, New York
      November 13, 2007

                        LEAV & STEINBERG, LLP

                        By: _____
                        DANIEL T. LEAV (DTL 5145)
                        Attorneys for Plaintiff
                        120 Broadway, 18th Floor
                        New York, New York 10271
                        (212) 766-5222

TO:

ABRAMS, FENSTERMAN, FENSTERMAN,
EISMAN, GREENBERG, FORMATO & EINIGER, LLP
By:  Todd C. Rubenstein, Esq.
Attorneys for Defendant
NEW ENGLAND MOTOR FREIGHT INC.
1111 Marcus Avenue, Suite 107
Lake Success, New York 11042
(516) 328-2300

"JOHN" CABALLERO
Has been served, but has not appeared

EXHIBIT 2

**NEW ENGLAND MOTOR FREIGHT, Inc.**   **NEMF** ®     www.nemf.com

| CONSG/DEST | PICK UP UNIT | ROAD UNIT | CONSIGNEE CODE | SHIPPER CODE | BILL TO CODE | FOR INQUIRIES CALL | PRO DATE | PRO NUMBER | PAGE |
|---|---|---|---|---|---|---|---|---|---|
| 70-01 | 53369 | | 997-1 | 53339 | 53335P | 908-353-6263 | 9/09/05 | 49465971 | 1/ |

**CONSIGNEE** TRIPLCA SOHO ANIMAL   HOSPITAL/5 W JSPEARD ST   NEW YORK   NY   10003   TELE. CONS. 999-999-9999

**SHIPPER** ROYAL CANIN   X J P S L 6   HARRISBURG   401 QUALITY CIRCLE   PA   17112 7499   SHPR. 908

**CONNECTING LINE PRO** | TO | FROM | CODE | KEY | NEMF REVENUE NS | BL OR SHIPPING NUMBER | DELIVERY RECEIPT

| NO. OF PCS. | HM | DESCRIPTION | CLASS | WEIGHT | RATE | CHARGES |
|---|---|---|---|---|---|---|
| 1 | | PLT STC 3 PCS   DISPLAY RACKS   INSIDE DELIVERY CHARGE   LIFT GATE CHARGE   **** SHIPPER LOAD & COUNT *****   PRO: NO | | 456 | | |

| | 001000C 49465971 ***** | **TOTALS** | | 5530? | | |

APT DATE
APT TIME
AUTH.

DRIVER IS NOT AUTHORIZED TO EXTEND CREDIT

COD AMOUNT

COD AMOUNT MUST BE CASH OR CERTIFIED CHECK UNLESS OTHER INDICATED

DATE 9-12-05   UNIT 3010   DRIVER CUBAVERO
ARRIVE 9:15   START UNLOAD 1:20   FINISH UNLOAD 4:25

PIECES
INSIDE DELIVERY
SORT AND SEG.
RESIDENTIAL
LIFT GATE  X

RECEIVED ABOVE GOODS IN GOOD CONDITION EXCEPT AS NOTED HEREON. STRETCH WRAP OR OTHER UNITIZATION OF PALLETS OR SKIDS INTACT UNLESS NOTED OTHERWISE.

CONSIGNEE NAME (PRINT)
PER     DATE
COMPLETE SIGNATURE / INITIALS NOT ACCEPTABLE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

LUIS GONZALEZ,                                          Civil Action No.
                                                        07-cv-4801 (DC)
                          Plaintiff,

        - against-                                      CERTIFICATE OF
                                                        SERVICE
"JOHN" CABALLERO (First name being unknown)
and NEW ENGLAND MOTOR FREIGHT INC.,

                          Defendants.
------------------------------------------------------------------------X
STATE OF NEW YORK
COUNTY OF NEW YORK

        Joseph P. Stoduto, an attorney admitted to practice in the State of New York, affirms
the following under the penalties of perjury: I am not a party to the action; I reside in
Brooklyn, New York, and I am over 18 years of age.

        On February 2q , 2008, I served the within Memorandum of Law and
accompanying Exhibits by filing same electronically through the ECF system and by
depositing true copies thereof, enclosed in a post-paid wrapper, in an official depository
under the exclusive care and custody of the United States Postal Service within New York
State, addressed to the following at the last known address set forth below:

Todd C. Rubenstein, Esq.
Abrams, Fensterman, Fensterman, Eisman,
Greenberg, Formato & Einiger, LLP
1111 Marcus Avenue, Suite 107
Lake Success, NY 11042

Sworn to on February 2q , 2008
New York, New York

                              X_____
                                 JOSEPH P. STODUTO, ESQ.